**CROSNER LEGAL, P.C.**
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

***Attorneys for Plaintiffs and the Proposed Class***

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Antoinette Alonzo and Nina Harris, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Chico's Distribution Services, LLC,<br><br>Defendant. | Case No. 3:26-cv-03719-LL-VET<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>[On Removal from the Superior Court of the State of California, County of San Diego, Case No. 26CU023747C]<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Antoinette Alonzo and Nina Harris ("Plaintiffs"), on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby sue Defendant Chico's Distribution Services, LLC ("Defendant") and, upon information and belief and investigation of counsel, allege as follows:

## I. <u>INTRODUCTION</u>

1. Plaintiffs bring this putative class action on behalf of themselves and all other similarly situated consumers in California who paid Defendant's hidden, mandatory fees (as described below) during the applicable statute of limitations period. Plaintiffs allege violations of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750*, et seq*. ("CLRA"); (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"); (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq* ("FAL"); and (4) Quasi-Contract/Unjust Enrichment.

2. Defendant owns and operates a "family brand of websites" where it sells apparel and related goods that include Soma (www.soma.com), Chico's (www.chicos.com), and White House Black Market (www.whitehouseblackmarket.com) (collectively, the "Websites"). The prices that Defendant advertises on its Websites do not disclose the total cost to consumers up front. Instead, they present the item's base price and omit a mandatory "processing" fee that is not revealed until the end of the purchase.

3. All of the Websites operate in a substantially similar manner with respect to Defendant's failure to disclose the total price upfront and its concealment of a mandatory "processing" fee until the end of the purchase process.

4. "Drip pricing" is the practice of "advertising a price that is less than the actual price that a consumer will have to pay for a good or service." SB 478, 2023 Cal. Stat. ch. 400, § 1(a). Defendant's practice of concealing mandatory processing fees on its Websites until the end of the purchase process constitutes drip pricing.

5. For example, Defendant's Soma retail brand specializes in women's lingerie, sleepwear, and loungewear. Consumers purchase these goods on Defendant's Soma website, www.soma.com (the "Soma Website"). The initial prices advertised for items on the Soma Website do not include a mandatory "Shipping & Processing" fee (sometimes described as a "Shipping & Handling" fee), which is excluded from the advertised price and not disclosed until the consumer reaches the Order Summary page during checkout.

6. Similarly, White House | Black Market ("WHBM") specializes in women's clothing and apparel sold on Defendant's website, www.whitehouseblackmarket.com (the "WHBM Website"). The initial prices advertised for items on the WHBM Website likewise exclude a mandatory "Shipping & Processing" fee (sometimes described as a "Shipping & Handling" fee), which is omitted from the initial advertised prices and not disclosed until the consumer reaches the Order Summary page during checkout.

7. Finally, Defendant's Chico's website, www.chicos.com (the "Chico's Website") specializes in women's clothing and apparel. Defendant's initial advertised prices for items it sells on the Chico's Website do not include a mandatory "Shipping & Processing" fee that is hidden from the initial advertised price and not disclosed until the consumer reaches the Order Summary page of the Website to begin the checkout process.

8. The California Legislature enacted California's Honest Pricing Law to address the problem of drip pricing and to specifically prohibit advertising, displaying, or offering goods for a price that does not include all mandatory fees (other than taxes and shipping). *See* Cal. Civ. Code § 1770(a)(29)(A). The UCL and FAL also prohibit this drip pricing practice.

9. While the Honest Pricing Law permits shipping to be added after the initial advertised price, the handling and/or processing portion of the fee that Defendant bundles into its "Shipping & Handling" and/or "Shipping & Processing"

fees after the initial advertised price is unlawful because Defendant does not include it in the initial advertised price for the items Defendant sells on its Websites.

10. Despite its title, the "Shipping and Processing" or "Shipping and Handling" charge is not the actual cost Defendant incurs in shipping merchandise to consumers. Defendant's "Processing" or "Handling" fee captures non-shipping costs that are separate from, and in addition to, the postage or carriage actually incurred to deliver a package. That non-shipping "Processing" or "Handling" component is a mandatory fee that the Honest Pricing Law requires be included in the advertised price. It is not a government charge, and it is not postage or carriage reasonably and actually incurred to ship goods to the consumer.

11. Defendant's "Processing" and "Handling" fees are mandatory fees because consumers must pay them in order to complete their purchases on Defendant's Websites. During the statute of limitations period, Defendant has used both "Processing" and "Handling" to refer to the hidden, mandatory fee. As alleged herein, the "Processing Fee" includes the "Handling" fee and the "Processing" fee Defendant charges and has charged Plaintiffs and other similarly situated consumers on its Websites during the applicable limitations period. All allegations herein concerning the "Processing Fee" apply equally to the "Handling Fee," and vice versa.

12. Defendant's deceptive pricing and imposition of the unlawful hidden Processing Fee misled Plaintiffs and other similarly situated consumers in California, lured them into transactions they may have avoided had they known the true cost up front, deprived them of the opportunity to comparison shop, and caused them to pay more than the prices initially advertised.

13. Plaintiffs, on behalf of themselves and all other similarly situated consumers in California who were charged a Processing Fee when they made purchases on Defendant's Websites, seek damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, pursuant to the CLRA,

FAL, UCL, and their claim for unjust enrichment.

## II. JURISDICTION AND VENUE

14. This action was originally filed in the Superior Court of California, County of San Diego, on April 29, 2026. Defendant removed the action to this Court on June 25, 2026. *See* Dkt. No. 1. Plaintiffs dispute that this Court has subject matter jurisdiction over this action and have filed a Motion to Remand, which remains pending. By filing this Amended Complaint pursuant to Federal Rule of Civil Procedure 15, Plaintiffs do not concede that removal was proper or that this Court has subject matter jurisdiction, and expressly preserves all arguments in support of remand.

15. This Amended Complaint is filed without waiving, withdrawing, or otherwise affecting Plaintiffs' pending Motion to Remand or any argument that this action should be remanded to state court.

16. The Superior Court of California, County of San Diego has jurisdiction pursuant to Article VI, Section 10 of the California Constitution and California Code of Civil Procedure § 410.10.

17. The Superior Court of California, County of San Diego has personal jurisdiction over Defendant because the acts complained of herein emanated from California. In addition, Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the advertising, marketing, labeling, and sale of goods on its Websites in California, specifically in this county. Thus, Defendant intentionally availed itself of the markets within California through its advertising, marketing, and sale of goods on its Websites to consumers in California, including Plaintiffs.

18. Venue is proper in the county of San Diego because Plaintiff Alonzo purchased merchandise through Defendant's WHBM Website in this district and Defendant committed the wrongful acts alleged herein in this jurisdiction.

## III. PARTIES

19. Defendant Chico's Distribution Services, LLC is a Florida corporation with a principal place of business located at 11215 Metro Parkway, Fort Myers, Florida 33966. At all times relevant to the allegations herein, Defendant advertised, marketed, made available for sale, and/or distributed goods to consumers in California. Defendant has sold its goods in, and has transacted in and throughout, California at all times during the applicable statute of limitations period. In addition, at all relevant times herein, Defendant owned, operated, and controlled the Websites.

20. Plaintiffs reserve their right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

21. Plaintiff Antoinette Alonzo ("Plaintiff Alonzo") is a California citizen residing in Carlsbad, California. In or around August 6, 2025, Plaintiff Alonzo made a purchase on Defendant's WHBM Website while located in Carlsbad, California that included a hidden mandatory Processing Fee that was not disclosed until the Order Summary page when the checkout process was started.

22. Plaintiff Nina Harris ("Plaintiff Harris") is a California citizen residing in Camarillo, California. In or around February 9, 2026, Plaintiff Harris made a purchase on Defendant's Soma Website while located in Camarillo, California that included a hidden mandatory Processing Fee that was not disclosed until the Order Summary page when the checkout process was started.

## IV. NATURE OF THE ACTION

### A. California Law Prohibits Drip Pricing, Including Hidden, Mandatory Handling and Processing Fees.

23. Effective July 1, 2024, the Consumer Legal Remedies Act ("CLRA") was expanded by Senate Bill 478 ("SB 478") to incorporate provisions commonly referred to as the "Honest Pricing Law." The Honest Pricing Law is "intended to

specifically prohibit drip pricing, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service." SB 478, 2023 Cal. Stat. ch. 400, § 1(a). The California Legislature specifically declared that "[t]his practice, like other forms of bait and switch advertising, is prohibited by existing statutes, including the Unfair Competition Law [Cal. Bus. & Prof. Code § 17200, *et seq.*] and the False Advertising Law [Cal. Bus. & Prof. Code § 17500, *et seq.*]." *Id.,* § 1(b).

24. SB 478 "focuse[d] on the very initial price advertising for two related reasons: first, to ensure that consumers are presented with full and complete price information before they make a purchase that may be to their financial detriment; and second, to level the playing field among advertisers, so that the advertiser who seeks to lure a consumer through the real or online 'door' cannot do so by under-disclosing the actual cost of their good or service in their advertisements."[1]

25. As the co-author of SB 478 explained, "Californians have had enough with bait-and-switch pricing, when we're not told upfront the true cost of goods and services…. Californians deserve to know exactly how much they're being asked to pay, and not be surprised later by hidden junk fees[.]"[2] The California Assembly Committee on the Judiciary noted in its analysis of SB 478 that "mandatory fees charged at the back-end of the buying process…make it harder to comparison shop. This causes consumers to underestimate the total price of what they're buying, often increasing total payments."[3]

26. The Honest Pricing Law makes it unlawful for most businesses to advertise, display or offer "a price for a good or service that does not include all

---

[1] Senate Bill Policy Analysis, SB 478 (June 27, 2023) at 5-6.

[2] Press Release, "Attorney General Bonta Calls for California Legislature to Ban Hidden Fees (AKA Junk Fees)." (May 16, 2023), available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-calls-california-legislature-ban-hidden-fees-aka-junk.

[3] Senate Bill Policy Analysis, SB 478 (June 27, 2023) at 3.

mandatory fees or charges other than … (i) Taxes or fees imposed by a government on the transaction … [or] (ii) Postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer.” Cal. Civ. Code § 1770(a)(29)(A). As the California Attorney General has explained, “the price a California sees should be the price they pay.”[4]

27. Handling and processing fees are not “postage or carrier charges” within the meaning of the Honest Pricing Law. The California Attorney General noted specifically with respect to “handling charges” that “[a] business can exclude shipping charges, but not handling charges. In the words of the statute, a business can exclude from its advertised price ‘[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer.’ Like any other mandatory fee or charge, a handling charge must be included in the advertised price.”[5]

28. The Honest Pricing Law’s prohibition on mandatory fees or charges not disclosed in the originally advertised price applies equally to “processing fees.” The Honest Pricing Law prohibits charging for a “processing fee” where the “originally advertised price did not reflect” that fee, “as it renders unlawful advertising the [product] for one price ‘that does not include all mandatory fees or charges other than’ those imposed for taxes or shipping.” *Mansfield v. StockX LLC*, 802 F. Supp. 3d 1143, 1151 (N.D. Cal. 2025) (citing Cal. Civ. Code § 1770(a)(29)(1)).

**B. Defendant Engages in Unlawful Drip Pricing by Hiding Mandatory Handling and Processing Fees.**

29. Despite the Honest Pricing Law’s clear application to mandatory handling and processing fees added to the price of a good after omitting it from the

[4] Office of the Attorney General, SB 478 – Hidden Fees, available at https://oag.ca.gov/hiddenfees.

[5] Office of the Attorney General, SB 478 – Hidden Fees, available at https://oag.ca.gov/hiddenfees.

initial advertised price, Defendant does not disclose these fees to its online customers until they reach the Order Summary page and begin the checkout process on its Websites.

30. The consumer experience on Defendant's Soma Website exemplifies Defendant's unlawful drip pricing practices. Consumers who shop online at the Soma Website first encounter the homepage, where they can select categories of items to browse such as bras, panties, sleepwear, apparel, lingerie, shapewear, swim, and sale items, as shown in **Figure 1** below: [6]




***Figure 1***

31. Once the consumer selects a category to browse, they can choose additional sub-categories, as shown in **Figure 2** below:

//

//

//

//

//

//

[6] Images accessed on March 12 and 16, 2026 at https://www.soma.com.




*Figure 2*

32. From there, the consumer can select yet another category, for example, "slippers & accessories," and specific items are displayed along with their purchase prices, as shown in **Figure 3** below. By default, customers browse items available for shipping, as curbside and in-store pickup is defaulted to "Off":




*Figure 3*

33. Defendant advertises each item's purchase price up front when it first appears on the Website. For example, the Slipper Socks item advertised on the Soma Website is advertised as $11.99, as shown in **Figure 4** below:




***Figure 4***

34. On the product detail page above, shipping is the default, pre-selected fulfillment method.

35. If a consumer decides to purchase the item at the advertised price, the consumer can click on the "ADD TO BAG" button. A "My Shopping Bag" pop up will then appear with the same advertised price, giving the consumer the option to move forward with the purchase by clicking on the "VIEW BAG & CHECKOUT" button, as shown in **Figure 5** below:



***Figure 5***

36. After the consumer clicks on the "VIEW BAG & CHECKOUT" button, they are taken to the Order Summary Page to begin the checkout process. Only then is the hidden, mandatory Processing Fee revealed to the consumer. For example, although the initial advertised price for Slipper Socks on the Soma Website shown above was $11.99, the Order Summary page shows a Shipping & Processing Fee of $8.95, a portion of which is a mandatory Processing Fee, as shown in **Figure 6** below:




***Figure 6***

37. Defendant's WHBM and Chico's Websites operate in the same manner, concealing the mandatory Processing Fee from the advertised price until the Order Summary page at the start of the checkout process.

38. The consumer purchase flow for Defendant's WHBM Website is shown below in Figures 7 through 12:[7]

[7] Images accessed on March 16, 2026 at https://www.whitehouseblackmarket.com/.

***Figure 7 - WHBM Website Home Page:***




***Figure 8 - Product Category Selection:***




***Figure 9 - Product Selection Page:***

//

//

//

//

//




***Figure 10 – Product Page:***




39. If a consumer decides to purchase an item at the advertised price, the consumer can click on the "ADD TO BAG" button. A "My Shopping Bag" pop up will then appear with the same advertised price, giving the consumer the option to

move forward with the purchase by clicking on the "VIEW BAG & CHECKOUT" button, as shown in **Figure 11** below:




***Figure 11***

40. The hidden, mandatory Processing Fee is not revealed to the consumer until the Order Summary page. For example, although the initial advertised price for the Convertible Huggie Hoops product on the WHBM Website shown above was $32, the Order Summary page reveals a Shipping & Processing Fee of $8.95, a portion of which is a mandatory Processing Fee, as shown in **Figure 12** below:



***Figure 12***

41. All of Defendant's Websites operate in a substantially similar manner, and have done so during the applicable limitations period by concealing the mandatory Processing Fee from the initial advertised price of products until the checkout process at the Order Summary Page.

42. Defendant may offer certain limited and conditional discounts, but those discounts are not universally available, and many consumers do not qualify for them. As a result, consumers who are ineligible for those discounts must pay the Processing Fee to complete their purchases. For example, Defendant may offer free shipping and processing to consumers whose purchases satisfy a specific order-value threshold. Consumers whose purchases do not meet that threshold are not eligible for the discount and must pay the Processing Fee. Likewise, Defendant may offer free in-store pickup only where the specific product, in the consumer's chosen color and size is in stock at a physical store near the consumer. Consumers who do not reside near one of Defendant's retail locations, or whose selected item is unavailable at a nearby store, cannot utilize in-store pickup and therefore must pay the challenged fee to complete their purchase.[8]

43. When a consumer selects an item that is unavailable for in-store pickup, the in-store pickup option remains visible. However, when the consumer clicks "Find a Store," every listed store is identified as "OUT OF STOCK," leaving shipping as the only available fulfillment method:

***Figure 13[9]***

//

//

---

[8] Figures 10 and 12, depicting the WHBM website as it appeared in March 2026, do not appear to offer a free in-store pickup option. *See supra*.

[9] Screenshot taken on August 4, 2026 at https://www.soma.com/.




44. The Processing Fee is not postage or carriage actually incurred. The $8.95 "Shipping & Processing" fee is a flat charge that does not vary with the postage or carriage actually incurred to deliver a given order. On information and belief, the flat fee exceeds the actual postage or carriage cost Defendant incurs on many orders, and the difference — the "Processing" component — is retained by Defendant as a non-shipping handling and processing charge. That component is a mandatory fee that must be included in the advertised price.

45. By concealing the mandatory Processing Fee until the Order Summary page on its Websites, Defendant advertises a price that is less than the actual price that a consumer will have to pay. By the time this Processing Fee is disclosed, consumers have already invested time and effort to choose the items they want to

purchase, relying on the initial advertised price. The omission of the Processing Fee until the very end of the purchase lures consumers into the transaction with a false representation of a lower price than will actually be charged. It also deprives consumers of the opportunity to comparison shop.

46. In advertising, displaying, and offering its products at a specific price, Defendant is representing that consumers are able to purchase the products for the listed price, with the exception of taxes or fees imposed by the government on the transaction, and postage or carriage charges that are incurred in the actual shipping of the product to the consumer. Notwithstanding that representation, the listing price of the products that Defendant advertises do not include all mandatory fees associated with the products, a misrepresentation that has caused Plaintiff and similarly situated consumers to incur costs in the form of additional fees assigned to these products at checkout.

47. Defendant's failure to include a mandatory Processing Fee in the initial advertised price of the products it sells on its Websites violates the CLRA's Honest Pricing Law provision, Cal. Civ. Code § 1770(a)(29)(A), which prohibits "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than … (i) Taxes or fees imposed by a government on the transaction … [or] (ii) Postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." Defendant's Processing Fees are not taxes or government fees, and they are not postage and carriage charges that will be incurred to ship the items to the consumer. Therefore, Defendant violated and continues to violate the CLRA's Honest Pricing Law provision.

48. No reasonable consumer would expect the prices advertised by Defendant to include an unlawful mandatory fee that increases the initial advertised price.

49. Defendant's failure to include mandatory Processing Fees in the initial

advertised price of the items it sells on its Websites also violates the UCL. Defendant's drip pricing scheme constitutes an unlawful, unfair, and fraudulent business practice under the UCL.

50. Defendant's failure to include its mandatory Processing Fees in the initial advertised price of the items it sells on its Websites also constitutes false advertising in violation of the FAL.

**PLAINTIFFS' PURCHASES, RELIANCE, AND INJURY**

51. In or around February 9, 2026, Plaintiff Harris purchased merchandise from Defendant's Soma Website while located in Camarillo, California. The initial advertised price of the merchandise she purchased was $39.98 and did not include a Handling or Processing Fee.

52. Plaintiff Harris relied on Defendant's initial advertised price to decide whether to purchase the merchandise or not.

53. Plaintiff Harris acted reasonably in relying on the initial advertised price that Defendant listed for the merchandise she purchased.

54. When Plaintiff Harris went to the Order Summary page on Defendant's Soma Website to pay for the merchandise, a "Shipping & Handling" fee of $8.95 was added to her transaction, a portion of which included a Handling Fee. Despite its title, the "Shipping & Handling" charge was not the actual cost Defendant incurred in shipping the merchandise to Plaintiff.

55. Similarly, Plaintiff Alonzo purchased merchandise from Defendant's WHBM Website on or around August 26, 2025. The initial advertised price of the merchandise she purchased was $24.98 and did not include a Handling Fee.

56. Plaintiff Alonzo relied on Defendant's initial advertised price to decide whether to purchase the merchandise or not.

57. Plaintiff Alonzo acted reasonably in relying on the initial advertised price that Defendant listed for the merchandise she purchased.

58. When Plaintiff Alonzo went to the Order Summary page on

Defendant's WHBM Website to pay for the merchandise, a "Shipping & Handling" fee of $8.95 was added to her transaction, a portion of which included a Handling Fee. Despite its title, the "Shipping & Handling" charge was not the actual cost Defendant incurred in shipping the merchandise to Plaintiff.

59. Defendant deceived Plaintiffs into thinking that their purchase price would cost the initial advertised price for the items (plus taxes and shipping) because the Handling Fee was not included in the original price of the items advertised on Defendant's Websites.

60. As a result of Defendant's unlawful and deceptive practice, Plaintiffs had to pay mandatory Handling Fees at checkout in addition to the initial advertised price of the products they purchased, plus shipping and any government-imposed taxes.

61. Plaintiffs lost money as a result of Defendant's deceptive conduct in that they paid more than what Defendant initially advertised for the items.

62. Defendant detrimentally altered Plaintiffs' position and caused them to suffer damages in an amount equal to the hidden, unlawful Handling Fees.

63. Plaintiffs would like to, and would consider, purchasing items from Defendant's Websites again when they can do so with the assurance that any Handling or Processing Fee will be disclosed upfront when the items are initially advertised on the Websites so that they know the true price of their purchases up front.

64. Defendant uniformly conceals the mandatory Handling Fee, also expressed as Processing Fee, in the prices it advertises on its Websites prior to the Order Summary page. Plaintiffs' experiences are materially the same as other consumers who make purchases from Defendant's Websites and are deprived of the opportunity to see the true price of the purchase until the hidden Processing Fee is revealed when the checkout process is started.

//

## V. CLASS ACTION ALLEGATIONS

65. Pursuant to Cal. Code Civ. P. § 382, Plaintiffs seek certification of the following Class:

**The California Class**
All persons in California who purchased one or more items for personal, family or household use and not for resale in California from Defendant's Soma, Chico's, and/or White House Black Market Websites and paid Defendant's handling or processing fee within the applicable statute of limitations and until the date class notice is disseminated.

66. Plaintiffs and the Class reserve their right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

67. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

68. The members in the proposed Class are so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiffs believe the total number of Class members is at least in the hundreds and members of the Class are numerous. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

69. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory

relief and damages as to the Processing Fee appropriate with respect to the Class as a whole. In particular, Defendant has failed to disclose the Processing Fee in its initial advertised product prices as described herein.

70. There is a well-defined community of interest in the questions of law and fact involved, affecting the Plaintiffs and the Class and these common questions of fact and law include, but are not limited to, the following:

- Whether Defendant violated consumer protection statutes, false advertising statutes, or state deceptive business practices statutes;
- Whether Defendant engaged, and continues to engage, in unfair or deceptive acts and practices in connection with the Processing Fee;
- Whether the proposed class is suitable for class certification;
- The proper amount of restitution, damages, and punitive damages;
- The proper injunctive relief, including cessation of the unlawful activity;
- The proper amount of attorneys' fees.

71. These common questions of law and fact predominate over questions that affect only individual Class Members.

72. Plaintiffs' claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct. Specifically, all Class Members, including Plaintiffs, were subjected to the same misleading and deceptive conduct when they purchased items that did not include the hidden, unlawful Processing Fee, and suffered economic injury because they paid the unlawful Processing Fee. Absent Defendant's business practice of deceptively and unlawfully imposing the Processing Fee, Plaintiffs and Class Members would not have purchased the items on Defendant's Website, or would have paid less for them.

73. Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have

retained counsel with substantial experience in handling complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

74. Plaintiffs and the members of the Class suffered, and will continue to suffer harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impracticable. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

75. Adjudication of individual Class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

76. Defendant has acted on grounds applicable to the Class, thereby making appropriate final public injunctive and declaratory relief concerning the Class as a whole.

77. As a result of the foregoing, class treatment is appropriate.

## VI. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### Violation of California's Consumers Legal Remedies Act

**Cal. Civ. Code §§ 1750, *et seq*.**

78. Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

79. Plaintiffs bring this claim under the CLRA individually and on behalf of the California Class against Defendant.

80. At all times relevant hereto, Plaintiffs and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

81. At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

82. At all relevant times, the items sold by Defendant on its Websites constituted "goods," as defined in California Civil Code section 1761(a).

83. The purchases of items from Defendant's Websites by Plaintiffs and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

84. Cal. Civ. Code § 1770(a)(29)(A) prohibits "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either of the following: (i) Taxes or fees imposed by a government on the transaction [or] (ii) Postage or carrier charges that will be reasonably or actually incurred to ship the physical good to the consumer."

85. Defendant advertises and displays the price for purchasing its items without disclosing the mandatory Processing Fee until the customer begins the checkout process.

86. The Processing Fee charged is mandatory because a consumer is not able to purchase the item without paying that Processing Fee.

87. The Processing Fee is not a government-imposed tax or fee on the transaction.

88. The Processing Fee is not a fee for shipping physical goods to the consumer. While reasonably or actually incurred shipping charges need not be

disclosed in the originally advertised price of a good or service, mandatory handling or processing fees must be included with the originally advertised price even where it is bundled with shipping charges as a "Shipping & Handling" or "Shipping & Processing" fee.

89. By committing the acts and practices alleged herein, Defendant has violated the CLRA's Honest Pricing Law provision, Cal. Civ. Code § 1770(a)(29)(A).

90. In addition, Defendant's acts and practices violated the CLRA's prohibition on "[r]epresenting that goods have characteristics, uses, or benefits which they do not have" (Cal. Civ. Code § 1770(a)(5)). By advertising prices that omitted the mandatory Processing Fee, Defendant represented that its merchandise could be purchased at the advertised price when it could not, misrepresenting the true price of the goods it offered.

91. Defendant's acts and practices violated the CLRA's prohibition on "[a]dvertising goods or services with the intent not to sell them as advertised" (Cal. Civ. Code § 1770(a)(9)). Defendant advertised its goods at prices it did not intend to honor, because it intended all along to add the mandatory Processing Fee at checkout.

92. Plaintiffs and Class Members were injured by Defendant's drip-pricing practices because they reasonably relied on Defendant's advertised price for the items they purchased. Defendant failed to make Plaintiffs and Class Members aware that they were required to pay a Processing Fee in Defendant's originally advertised purchase prices, and only disclosed the Processing Fee to consumers on the Order Summary page at the end of the purchase process. As a result, Plaintiffs and the Class paid prices for the items they purchased that differed from the originally advertised purchase price and suffered an injury under this statute. Plaintiffs and the Class spent money on goods or services that they would not have paid for, or would have paid for on different terms, had they known the actual prices of the items they

purchased from the outset.

93. Defendant's actions as described herein were done with conscious disregard of Plaintiffs' and the Class members' rights and were wanton and malicious.

94. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant still fails to include the Processing Fee in the originally advertised price of the items it sells to consumers on its Websites.

95. Pursuant to California Civil Code section 1782(d), Plaintiffs and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

96. Pursuant to California Civil Code section 1782, Plaintiffs notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

97. More than thirty days have passed, and Defendant has not taken the corrective action outlined in Plaintiffs' letter. As such, Plaintiffs seek actual, punitive, and statutory damages as appropriate, as well as attorneys' fees and costs for Defendant's violations of the CLRA.

98. Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in a proper forum.

## SECOND CLAIM FOR RELIEF

## Violation of California's Unfair Competition Law

## Cal. Bus. & Prof. Code §§ 17200, *et seq*.

99. Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

100. Plaintiffs bring this claim under the UCL individually and on behalf of the California Class against Defendant.

101. The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

102. Defendant committed unlawful business acts or practices by violating the CLRA, Cal. Civ. Code § 1770(a)(29)(A). As alleged above, Defendant violated the CLRA by failing to disclose its mandatory Processing Fee when it originally advertised the purchase price for its goods on its Websites. Plaintiffs, individually and on behalf of the other Class members, reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

103. Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiffs and the members of the Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. The California Legislature has specifically declared that drip pricing, "like other forms of bait and switch advertising, is prohibited by existing statutes, including the Unfair Competition Law [Cal. Bus. & Prof. Code § 17200, *et seq.*]…." SB 478, 2023 Cal. Stat. ch. 400, § 1(b). There is no societal benefit from deceptive drip pricing. Instead, it is an unfair practice that lures consumers in with the false promise of lower prices, denying them the opportunity to comparison shop. While Plaintiffs and the other Class members were harmed, Defendant was unjustly enriched by its deceptive conduct and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

104. Defendant committed "fraudulent" business acts or practices by not disclosing the Processing Fee up front with the initial price of the goods on its Website, as set forth herein. Defendant's business practices as alleged are

"fraudulent" under the UCL because they are likely to deceive customers into believing the initial prices of Defendant's goods are the full cost of the items despite the fact that higher prices are charged at checkout by way of the Processing Fee.

105. Plaintiffs and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiffs and the other members of the Class, each of whom incurred the hidden, mandatory Processing Fee. Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of paying the hidden, unlawful Processing Fee and Defendant's unlawful, unfair, and fraudulent practices.

106. Defendant's wrongful business practices and violations of the UCL are ongoing.

107. Plaintiffs and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiffs and the Class seek interest in an amount according to proof.

108. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiffs, individually and on behalf of the California Class, seek (1) restitution from Defendant of all money obtained from Plaintiffs and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

## THIRD CLAIM FOR RELIEF

**Violation of California's False Advertising Law**

**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

109. Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

110. Plaintiffs bring this claim under the FAL individually and on behalf of the California Class against Defendant.

111. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

112. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

113. The California Legislature specifically declared that drip pricing, "like other forms of bait and switch advertising, is prohibited by existing statutes, including … the False Advertising Law [Cal. Bus. & Prof. Code § 17500, *et seq.*]." SB 478, 2023 Cal. Stat. ch. 400, § 1(b).

114. As alleged herein, Defendant violated the FAL by engaging in drip pricing and disseminating deceptive statements about the price of items sold on its Websites. Defendant's initially displayed prices for items on its Websites failed to include the mandatory Processing Fee.

115. Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiffs purchased items in reliance on Defendant's false and misleading advertising about the price of the item, which did not include a mandatory Processing Fee.

116. Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has

advertised items on its Websites in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

117. Defendant profited from its sale of the falsely and deceptively advertised items to unwary consumers.

118. As a result, Plaintiffs, the Class, and the general public are entitled to public injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

119. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs, on behalf of themselves and the Class, seek an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, deceptive pricing, and any other act prohibited by law, including those set forth herein.

## FOURTH CLAIM FOR RELIEF

### Quasi-Contract/ Unjust Enrichment

120. Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

121. Plaintiffs bring this claim for quasi contract/unjust enrichment individually and on behalf of the California Class against Defendant.

122. As alleged in detail above, Defendant's false and misleading advertising and pricing of items sold on its Websites caused Plaintiffs and the Class to purchase items for more than their initial advertised prices.

123. In this way, Defendant received a direct and unjust benefit, at Plaintiffs' and the Class's expense.

124. It would be unjust and inequitable for Defendant to retain the above-mentioned benefits. For example, Defendant was only able to charge the Processing Fee by intentionally withholding the full price of the goods from Plaintiffs until the checkout process was started on the Order Summary page of its Websites.

125. Plaintiffs and the Class seek restitution.

## VII. PRAYER FOR RELIEF

126. Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for judgment against Defendant as follows:

- For an order certifying this action as a class action, appointing Plaintiffs as the Class Representatives, and appointing Plaintiffs' Counsel as Class Counsel;
- For an order declaring that Defendant's conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;
- For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;
- For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;
- For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;
- For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and
- For such other and further relief as the Court deems just and proper.

## JURY DEMAND

127. Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August 6, 2026 **CROSNER LEGAL, P.C.**

By: <u>*Lilach H. Klein*</u>
Lilach H. Klein

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*lilach@crosnerlegal.com*

***Attorneys for Plaintiffs and the Proposed Class***

**Civil Code Section 1780(d) Venue Affidavit**

I, Lilach H. Klein, declare as follows:

1. I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiffs.

2. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

3. Defendant has done, and is doing business in California, including in this District. Such business includes the marketing, promotion, distribution, and sale of items that include an unlawful hidden, mandatory handling or processing fee.

4. Plaintiff Antoinette Alonzo paid the unlawful mandatory fee at issue in this District.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on August 6, 2026 in Sacramento, California.

Crosner Legal, P.C.

By: *Lilach H. Klein*
LILACH H. KLEIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*lilach@crosnerlegal.com*